HEARD NOVEMBER TERM, 1875.

### *Ex parte* PARKER.

A Circuit Judge has no authority, without the sanction of the Chief Justice, to enter the territorial limits of a Circuit not his own, hear an application for a writ of *habeas corpus* by a prisoner there confined, issue the writ and discharge the prisoner.

The provisions of the Constitution and Acts of the Assembly relative to the cases in which a Circuit Judge may exercise judicial powers outside the territorial limits of his own Circuit, stated and commented on.

BEFORE MACKEY, J., AT RICHLAND, AUGUST, 1875.

This was a petition by N. G. Parker to the Hon. Thomas J. Mackey, Judge of the Fifth Circuit, stating that the petitioner was illegally detained in custody by the Sheriff of Richland County, and praying for a writ of *habeas corpus*. The writ was issued at Columbia on the 13th of August, 1875, and on the 16th of the same month, at the same place, the return was made and the petitioner discharged from custody.

The facts of the case, so far as they relate to the only question considered by this Court, are so fully stated in the opinion of the Court as to render any further statement unnecessary.

*Rion*, for appellant.

*Youmans*, contra.

February 1, 1876. The opinion of the Court was delivered by

WILLARD, A. J. This is an appeal brought by the Attorney General in behalf of the State from an order made by the Hon. T. J. Mackey, Circuit Judge of the Sixth Circuit, upon a writ of *habeas corpus* issued by him in the Fifth Circuit to inquire into the cause of the detention of N. G. Parker, held in confinement in the

city of Columbia, within the Fifth Circuit, by which the detention of Parker was held to be illegal, and he was released from confinement.

It appeared by the return of the Sheriff of Richland County to the writ that Parker was held by him under two several orders of arrest signed by D. B. Miller, Esq., Clerk of the Court of Common Pleas and General Sessions for the County of Richland. The first of these orders of arrest was made in an action in which D. H. Chamberlain and others, Commissioners of the Sinking Fund, were plaintiffs, and N. G. Parker was defendant, bearing date April 21, 1875. The other order of arrest was made in an action in which the State was plaintiff and N. G. Parker defendant, and was dated April 22, 1875.

The brief sets forth this history of the two cases referred to as appearing by the records in the office of the Clerk of the Court; but it will not be necessary to refer particularly to the various proceedings in these cases, as an objection has been interposed, going to the authority of the Circuit Judge to issue the writ of *habeas corpus*, which, under the view taken of it by this Court, disposes of all questions properly before us under the present appeal. It is proper, however, to notice that the action brought by the Commissioners of the Sinking Fund was discontinued, on motion of the Attorney General, July 21, 1875, prior to the issuing of the writ of *habeas corpus*. It follows, therefore, that at the time of the issuing of the writ the order of arrest made in the action of the *State* vs. *N. G. Parker* was the only authority for detention then in operation.

It is contended that the Circuit Judge of the Sixth Circuit could not issue a writ of *habeas corpus* within the Fifth Circuit. On the other hand, it is contended that the authority of the Circuit Judges to issue writs of *habeas corpus* is not limited to writs issued within their Circuits, but that such writs may be issued by any Circuit Judge in any part of the State where he may chance to be present. It is also argued that, inasmuch as the Circuit Judge of the Fifth Circuit was at the time absent from his Circuit, the Circuit Judge of the Sixth Circuit, that being an adjoining Circuit, had authority, and was bound by law, to issue a writ within the last named Circuit, if application was made to him for such writ on proper grounds, while temporarily present within the territorial limits of the last named Circuit.

We will proceed to consider the force of this objection and the arguments directed against it.

The provisions of the Constitution directly bearing on this question are contained in Sections 13 and 14 of Article IV, and are as follows :

"SECTION 13. The State shall be divided into convenient Circuits, and for each Circuit a Judge shall·be elected by joint ballot of the General Assembly, who shall hold his office for a term of four years, and during his continuance in office he shall reside in the Circuit of which he is Judge.

"SEC. 14. Judges of the Circuit Court shall interchange Circuits with each other, in such manner as may be determined by law."

Under Section 13 the State was divided by the Legislature into eight Circuits, and Judges were elected for each Circuit, as prescribed by the Constitution.

Opposite views have been entertained of the force of Section 14. On the one hand it has been contended that, independent of this Section, the Circuit Judges possess authority to exercise their powers as Judges beyond their Circuits to any extent that might be permitted by acts of legislation. On the other hand, it has been contended that, independent of Section 14, they could exercise no authority whatever beyond the territorial limits of their respective Circuits. It will not be necessary to determine which of these opinions has the soundest basis in order to place a construction on Section 14 that will be sufficient to dispose of all the questions arising in the present case. It will be sufficient if it be found that the true intent of Section 14 was to restrain the authority of the Circuit Judges to action taken within the territorial limits of their respective Circuits, except where authorized by statute to perform duties beyond those limits. The question is one exclusively relating to the place where judicial duties ought to be performed, and not of any territorial limitation of the force of such acts when rightfully performed.

The fourteenth Section contains a positive mandate enforcing a general duty of interchange, under the words "shall interchange Circuits with each other," and a direction by which that duty may be made specific and determinate, under the words "as may be determined by law." The mandate, whether intended to call into existence, as original, the duty of interchange, or to enforce that which, independently of it, might be inferred from the nature of the office and other provisions of the Constitution establishing it, clearly·gives expression to the whole duty of the Circuit Judges as it regards interchange of Circuits, and subjects that duty to such

provisions of law as should thereafter be enacted to render it specific and determinate. The word "shall," to the same extent that it confers or recognizes a general duty of the Judges, confers on the Legislature the right to prescribe the mode and manner of its exercise, and this implies the right to say when and under what circumstances it shall not be binding. Inasmuch as, from the nature of the judicial office, the right to exercise judicial powers is always commensurate with the duty governing their exercise, it follows that the entire right and duty of interchange as between the Circuit Judges is subjected by the Constitution to the control of the Legislature. It also follows that if the Legislature undertakes to exercise the power and prescribes certain cases and modes in which such interchange may take place, it must be regarded as withholding its sanction from interchange in other cases and under other modes than those prescribed.

It is necessary to ascertain, at this point, what is embraced under the term interchange, and whether every right or duty to exercise judicial functions in a Circuit other than the proper Circuit of a Judge is to be regarded as an interchange within the meaning of the Constitution. If such should be found to be the case, then it would follow that no judicial functions can rightfully be exercised by a Circuit Judge beyond the territorial limits of his Circuit, except when authority of law has been conferred for that purpose. The words "shall interchange Circuits with each other," considered in the narrowest view that can be taken of them, would cover the case of an arrangement by which A should take B's Circuit for a limited time and B should take A's Circuit for the same time. This would be a case of *exchange* or of *mutual* interchange. It is clear that such a limited construction would not satisfy the purpose of the Constitution. It would leave unprovided for and unconsidered the more important case of a vacancy in any Circuit, or the inability of its Judge, temporary or permanent, to perform his duties, which would occasion a cessation of the functions of the Circuit Court for an inconvenient period, unless a Judge could be supplied from the other Circuits. It is not to be assumed as the intention of the Constitution to regulate the minor details of judicial interchange, overlooking provisions vital for keeping in action the judicial machinery. If the words "shall interchange Circuits with each other" can, without doing violence to their propor sense, receive an interpretation large enough to include all the contin-

gencies that may render the interchange of judicial duties necessary, that construction is the one that is conformable to the true spirit of constitutional construction.

The terms employed do not confine themselves to cases of mutual interchange. Interchange, based on the principle of equality, as fully satisfies that language as that based on mutuality or reciprocity. Interchange between two may be considered as properly mutual or reciprocal interchange; but between a larger number naturally resolves itself into the idea of a system of interchange covering all cases where interchange may either be necessary or desirable, adjusted on the principle of equalizing the duties and labors all are called upon to perform under it. There is clearly no difficulty in placing this enlarged construction upon the words employed by the Constitution.

We must conclude, then, that it was the intent of the Constitution to confine the Circuit Judges in the performance of judicial duties to the Circuits to which they are respectively elected, except when authority to go beyond that limit is conferred by some statute.

It is now in order to see to what extent the statute permits the Circuit Judges to act beyond the limits of their Circuits.

It is provided by a statute passed under and in pursuance of Section 14, Article IV, of the Constitution, as follows:

"The Judges elected and commissioned for the several Circuits shall hold the Courts of Common Pleas and General Sessions for the several Counties in their respective Circuits: *Provided*, Said Judges shall interchange Circuits upon their request to, and order of the Chief Justice, or upon the order of the Chief Justice without such request, whenever in his judgment it shall be deemed advisable."

By the foregoing provision, the right of a Circuit Judge to hold the Circuit Court in another than his own Circuit depends upon the sanction and order of the Chief Justice.—General Statutes, 57 0, § 26.)

The only other provisions of law bearing upon this question are contained in Sections 417 and 419 of the Code of Procedure. Subdivision 3 of Section 417 is as follows: "Orders made out of Court without notice may be made by the Judge of the Court in any part of the State." If by "Judge of the Court" is meant the Judge of the Circuit in which the cause is pending, then it is certainly sufficient to enable a Circuit Judge to make *ex parte* orders in causes pending in his own Circuit in any part of the State where he may

chance to be. Whether it is authority for any Circuit Judge in the State to make *ex parte* orders in any cause pending in any of the Circuits need not be considered here, that question not being involved in the present case. But if that should be the true construction of the words "in any part of the State," it could not be construed as authority for a Judge to go into another Circuit and there make *ex parte* orders, but to make such orders within his own Circuit although acting upon cases pending elsewhere. It would, under that construction, appear to be a provision affecting the place where orders of that class might be made, and not one relating to the performance of judicial acts by a Judge beyond the territorial limits of his Circuit.

Subdivision 4 is as follows : " Motions upon notice must be made within the Circuit in which the action is triable, or, in the absence or inability of the Judge of the Circuit, may be made before the Judge of a Circuit adjoining that in which it is triable." This provision primarily relates to a contingent jurisdiction in the Circuit Judges to hear contested motions in causes triable in other Circuits than their own. It does not, by any necessity of its language or purpose, confer on a Circuit Judge power to perform judicial duties within the limits of a Circuit other than his own, although it authorizes the performance of acts that may in themselves have authority beyond his Circuit. If such a construction were otherwise admissible, it is precluded by the word "adjoining." The obvious purpose of limiting this contingent authority to the Judges of an adjoining Circuit was to prevent unreasonable travel on the part of parties and their counsel in order to reach a place where such motions could be made. If it had been in the contemplation of the Legislature that such motions should be heard in their proper Circuits by some Judge of another Circuit temporarily present there, they, doubtless, would have extended such authority to any Judge in the State temporarily present. It is evident that the Legislature had in mind the case of parties compelled to go beyond the limits of their Circuits in order to make motions of that class, and the language must be restrained to its primary sense under the influence of the object they must be deemed to have had in view.

Section 419 is as follows: "Where notice of a motion is given or an order to show cause is returnable before a Judge out of Court, and at the time fixed for the motion he is absent or unable to hear

it, the same may be transferred by his order to some other Judge before whom the motion, in case of his absence or inability, might have been made. " This Section extends the provisions of subdivision 4, already referred to, to the case of a motion already noticed or ordered to be heard in its proper Circuit; but where the hearing cannot take place according to such notice or order by reason of the absence or inability of the Judge of that Circuit, in that case such Circuit Judge may select from among the Judges of the adjoining Circuits the Judge who should hear the case in his place. It has no application in enlarging the authority of the Judges to take judicial action at places beyond the limits of their Circuits. This Section is not happily phrased, but it is not difficult to see how cases may arise under its provisions.

It has, therefore, been seen that no provision of law exists authorizing a Circuit Judge to enter another Circuit and perform judicial functions there without the sanction and consent of the Chief Justice. No such sanction or order was given in the present case. There is no reason why authority to issue the writ of *habeas corpus* should form an exception to this rule. If the issuing of this writ is not always to be regarded as a duty performed by the Circuit Court, it is still a duty incident to Circuit jurisdiction and one that follows the limits of that jurisdiction. The reason for circumscribing by territorial limits the jurisdiction of the respective Circuit Judges, so that their duties and responsibilities may be separate and clearly distinguished, applies with equal force to that important class of judicial proceedings that grow out of the use of that writ. If that writ is useful in keeping Judges within the limits of their jurisdictions, it would lose much of its usefulness if it merely resulted in opposing the judgment of one Judge to that of another of co-ordinate powers.

Our conclusion is that the Circuit Judge of the Sixth Circuit had no authority, so far as appears by the case before us, to entertain the application for the writ of *habeas corpus* within the limits of the Fifth Circuit, and that the writ was improperly issued and must be set aside, with all proceedings based upon it.

It would manifestly be improper in the present state of the case to pass upon the validity of the order of arrest. That question should be heard and passed upon by the Circuit Court in which the action is pending before it is reviewed in this Court; and, for

that reason, this Court deems it premature to consider the other important questions discussed at the bar.

The writ and all proceedings based upon it must be set aside.

*Moses,* C. J., and *Wright,* A. J., concurred.